## MINNESOTA CASKET CO. v. HERBERT S. SWANSON AND ANOTHER.[1]

April 30, 1943.

No. 33,375.

*Frank A. Barlow,* for appellants.
*Flesher & Young,* for respondent.

JULIUS J. OLSON, JUSTICE.

Defendants appeal from an order striking out their "amended answer as sham and frivolous, and for judgment in favor of the plaintiff as demanded in the complaint."

The action was brought to recover upon four promissory notes, execution and delivery of which defendants admit. Defensively they plead "that said notes * * * have been paid in full by rea-

[1]Reported in 9 N. W. (2d) 324.

son of facts" now to be stated: For a period of "at least fifteen years prior" to 1938, "defendants purchased a large number of caskets" from plaintiff; that such purchases were made upon price lists or catalog prices furnished by plaintiff to "the trade"; that thereby credits of five to seven dollars were allowed to purchasers if no box was wanted or provided; that from 1928 to 1938, inclusive, the credits for such boxes to which they were entitled amounted to $1,813.50; that "defendants have requested the plaintiff to pass these credits" to their account, and that "plaintiff has always given to the defendants an evasive reply by assuring" them that it "would check into the matter and check the records." Finally, they assert that by reason of the failure so to credit these items defendants "are entitled to a credit or set-off" against plaintiff's claim in the amount stated, and they ask judgment "for any excess" that these credits amount to over and above the amount of plaintiff's notes. Neither the complaint nor the answer is verified.

Plaintiff moved to strike the amended answer as sham and frivolous, basing its motion upon the pleadings and an affidavit by its vice-president, Mr. C. M. Gasser, to which a written agreement was attached as an exhibit bearing date August 31, 1938. In his affidavit he avers "that the first time * * * Defendants ever claimed Plaintiff had made an overcharge for boxes, was sometime during the month of June or July, 1938," when affiant "called on the Defendants requesting payment of the notes now sued upon." At that time he and defendants conferred and considered the question of defendants' claimed credit for boxes, that he told them the invoices were correct, and that "he could not consent to any reduction by reason of the alleged overcharge." Thus matters rested until August 31, 1938, when a written "memorandum of agreement" was entered into between the parties at "the office of the Defendants' attorney" in Minneapolis. This agreement recites:

"Whereas, the parties of the second part [defendants] are indebted to the party of the first part [plaintiff] as of May 1, 1938

in the sum of" $3,493.43, principal and accrued interest, the whole thereof being "represented by the following notes" (then follows a list of notes, among them the four sued upon in this action):

"Whereas, the party of the first part agrees to allow the parties of the second part" certain discounts by reason of "purchases made" by defendants, the amount to be paid was reduced to $3,287.65; and

"Whereas" defendants "hereby acknowledge the debt and are desirous of paying off said indebtedness" in the following manner: At the rate of "$50 per month during the first year commencing September 1, 1938, and ending with September 1, 1939, said payments and all subsequent payments to be applied on the oldest indebtedness first"; during the second year at $75 per month; during the third year at $100 per month, and during the fourth year "at the rate of $150.00 per month until the entire sum has been paid.

                \*    \*    \*    \*    \*

"It is further understood and agreed that Herbert Swanson, one of the second parties, shall have his life insured for Three thousand Dollars ($3,000.00) and name the first party as beneficiary by way of security for above extension, and said insurance to remain in full force and effect until the entire indebtedness hereinbefore set forth is paid and the premium thereof to be paid by the second parties.

"It is further agreed, however, that should any of the premiums not be paid on said insurance, the first party may pay the same for the second parties and add the same to the principal of said indebtedness."

Pursuant to and in accordance therewith, defendants have since made payments to the extent of $2,100, the last having been made on or about March 25, 1941. Shortly thereafter Mr. Gasser called upon the defendant Herbert S. Swanson "requesting him to make payment under the agreement, when said Defendant made for the second time [the] claim that Plaintiff had overcharged Defendants on merchandise purchased."

To meet this proof defendant Herbert S. Swanson in his affidavit states that "a short time prior to the time" defendants signed the written agreement set forth in the motion to strike, "he had an extended conversation" with Mr. Gasser, "the substance" of which was that "defendants claimed a large amount of credits by reason of purchases as set out in defendants' amended answer, and that this defendant submitted a partial list in writing" to Mr. Gasser, who thereupon "stated that he would check it over carefully and inform the defendants of the results of said check"; that a few days later "defendants signed said agreement * * * but before having received word" from Mr. Gasser "as to the results of his check"; that affiant "was under the impression" from this conversation that "they would subsequently get together at a later date and go over defendants' claim." He further avers that Mr. Gasser "never thereafter contacted these defendants about said credits, and that these defendants did not press * * * for a hurried answer well knowing that the check-up would require a considerable amount of time"; that for this reason defendants "did not press" plaintiff "for an answer to defendants' claim"; that during the summer of 1941 defendants "demanded of said plaintiff a check-up of said invoices and the records pertaining thereto to ascertain the correctness or incorrectness of defendants' claim for credits, and that said plaintiff and its agents refused to make any check of any kind, nature or description." Therefore, so they now assert, they "honestly believe" that they are entitled to the credits claimed in their answer, and that they should be granted the desired credits upon plaintiff's present claim. This is a summary of what confronted the trial judge when the motion was heard and granted. The question to be decided is whether there was a fact issue requiring a trial on the merits.

■ Defendants devote much space in their brief to the claim that their answer is "in effect a counterclaim" and therefore immune to plaintiff's motion. Even if we were to grant their claim that it is, although clearly it is not, that does not help them, for our decisions hold the other way. Thus, in Monitor Drill Co. v.

Moody, 93 Minn. 232, 100 N. W. 1104, that question was squarely presented, and we held that such pleading "may be stricken out on motion as sham or frivolous." That also was the holding in Bettingen v. Moshier, 180 Minn. 356, 230 N. W. 811. That, too, is the recognized rule as stated in 5 Dunnell, Dig. & Supp. § 7662.

We come then to the only question properly here, viz.: Is there a fact issue requiring a trial on the merits?

■ The applicable rule was recently restated in such clear and concise terms in Independent School Dist. v. White Bear Lake, 208 Minn. 29, 32, 292 N. W. 777, 779, that a repetition thereof is well worth while. We there said:

"A pleading is sham if it is false in fact. * * * The falsity of a pleading may be established by affidavit. * * * Where the fact of falsity is established as it is here by a clear and unequivocal showing, the failure of the opposing party to answer and contradict the showing must be taken as admitting its truth. Allegations of fact in a pleading shown to be false should not be permitted to stand."

■ A frivolous answer "is one which is so glaringly insufficient as a defence that the court can determine its insufficiency upon bare inspection, without argument; one that does not in any view of the facts pleaded present a defence to the action." 5 Dunnell, Dig. & Supp. § 7668, and cases cited under notes. But we think the only question needing consideration here is whether the pleading in question is sham, since, if it is, that ends further discussion. If this pleading is not sham, we doubt that it can be said to be frivolous.

■ We think these facts are clearly established: Defendants for value duly executed and delivered the notes upon which this action is founded. Each note represents a recognized indebtedness for goods purchased. When the parties got together and adjusted their conflicting claims on August 31, 1938, there was an accord between them as to the total amount of the indebtedness then past

due as well as to time of future payments. As we have seen, there were eight notes listed in their agreement, as follows:

| "Date. | Amount | When Due | Int. to 5/1/38 6% |
|---|---|---|---|
| 12/30/34 | $ 750.00 | On Demand | $150.00 |
| 8/15/35 | 200.00 | 2/15/36 | 32.50 |
| 9/15/35 | 200.00 | 3/15/36 | 31.50 |
| 10/15/35 | 250.00 | 4/15/36 | 38.15 |
| 11/15/35 | 250.00 | 5/15/36 | 36.90 |
| 12/ 1/35 | 250.00 | 6/15/36 | 36.25 |
| 1/ 1/36 | 299.17 | 6/15/36 | 42.00 |
| 7/15/36 | 813.16 | 6/15/37 | 113.80 |
| | $3,012.33 | | $481.10" |

It is to be noted also that all of the notes were past due and unpaid when the agreement was entered into. Since then defendants have paid $2,100 in accordance with its terms, out of which they have retired the first four notes listed. Because they later defaulted in respect to their promised payment of $150 per month, which was to continue until the entire debt was met, this action resulted.

We think there can be no doubt that when the new agreement was made to reduce the amount of defendants' debt and to provide for new terms of payment the parties intended that the reduced debt and the new terms of payment constituted a complete adjustment of their respective claims. Over a long period of years the parties acted upon the strength of it as a binding obligation. There is neither suggestion of fraud nor overreaching in its procurement, nor claim made that it was arrived at as the result of mutual mistake. As a matter of fact, defendants say in their brief that the agreement "constitutes an accord and satisfaction between the parties." We may assume that they are correct in that view, but, since they failed to comply with the terms of their accord, they cannot now be heard to deny plaintiff's right to enforce the notes not met by the agreement, because they themselves breached its provisions. That agreement is not in the case as a

cause of action or defense, but simply as proof in support of plaintiff's claim that their answer is a mere sham.

Under the circumstances here disclosed and the facts appearing, it cannot be said that there is a fact issue to try. A verdict for defendants could not be sustained. Therefore the trial court was right, and its order accordingly is affirmed.

Affirmed.